IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Jermaine C. Tyler               :

Plaintiff                     :

                            :

   VS.                      :

                            :     Case No.:

Natasha Charisse Hewlett,   :

Judge David Boynton (Retired), :

and other Defendants named in the :

Complaint,               :

                            :

Defendants.              :

                            :

**HD**

Rcv'd by: _____

Case No.: 8:COA 25CV2268

USDC- GREENBELT
'25 JUL 14 PM12:26

...................................................................................................................

### COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF

Plaintiff Jermaine C. Tyler, proceeding pro se, respectfully files this civil rights action under 42 U.S.C. §§ 1983, 1985(3), and the First and Fourteenth Amendments to the United States Constitution, against the above-captioned Defendants in their individual and/or official capacities. Plaintiff seeks declaratory, injunctive, and monetary relief arising out of a systemic pattern of constitutional violations, judicial misconduct, and retaliatory acts during family law proceedings in Montgomery County, Maryland.

This Complaint is pled to survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and should be liberally construed in accordance with Haines v. Kerner, 404 U.S. 519 (1972), due to Plaintiff's pro se status.

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(3) (civil rights jurisdiction) because the action arises under the Constitution and laws of the United States.

2. Declaratory relief is authorized by 28 U.S.C. § 2201, and injunctive relief is authorized by 28 U.S.C. § 2202 and 42 U.S.C. § 1983.

1

3. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events or omissions giving rise to the claims occurred in Montgomery County, Maryland, within the District of Maryland.

## PARTIES

4. Plaintiff: Jermaine C. Tyler is a resident of the State of Maryland, a father of a minor child, and a federal employee. He brings this action in his individual capacity. He has been subjected to repeated constitutional violations, including deprivation of parental rights, enforcement of fraudulent orders, retaliation for protected activity, and denial of due process.

5. Defendant: Natasha Charisse Hewlett is the Plaintiff's former spouse. She is sued in her individual capacity for submitting falsified federal documents in state court proceedings and conspiring with state officials to obstruct justice and retaliate against Plaintiff.

6. Defendant: David A. Boynton is a retired Circuit Court Judge for Montgomery County, Maryland. He is sued in his official capacity only, for declaratory and injunctive relief arising from actions taken on the bench in 2020 and 2021 despite a known conflict of interest.

7. Defendant: Bibi M. Berry is a sitting Circuit Court Judge for Montgomery County, Maryland. She is sued in her official capacity only, for declaratory and injunctive relief due to her presiding over proceedings tainted by fraud and her alleged intentional misrepresentation of the judicial record.

8. Defendant: David A. Lease is a sitting Circuit Court Judge for Montgomery County, Maryland. He is sued in his official capacity only, for declaratory and injunctive relief related to his refusal to correct or vacate orders procured through proven fraud.

9. Defendant: Carlos Acosta is a sitting Circuit Court Judge for Montgomery County, Maryland. He is sued in his official capacity only, for declaratory and injunctive relief for presiding over post-trial matters despite conflicts of interest and failing to protect Plaintiff's rights.

10. Defendant: Michael J. McAuliffe is a sitting Circuit Court Judge for Montgomery County, Maryland. He is sued in his official capacity only, for continuing to enforce void or tainted judgments without addressing the constitutional concerns raised by Plaintiff.

11. Defendant: Gregory Wells is Chief Judge of the Appellate Court of Maryland. He is sued in his official capacity only, for refusing to reopen an appellate case despite a corrected record and acknowledged judicial misstatement.

12. Defendants: John Maloney, Debra Dwyer, and James Bonifant are Circuit Court Judges for Montgomery County. Each is sued in their official capacity only, for declaratory and injunctive relief based on conduct contributing to procedural violations and denial of parental rights.

13. Defendant: Anne Gregorski is a Clerk with the Montgomery County Circuit Court. She is sued in her official capacity only, for her role in maintaining and transmitting a materially incorrect appellate record.

14. Defendant: Jennifer Littlejohn is a Judicial Assistant to Judge David Lease. She is sued in her official capacity only, for administrative conduct in accepting and managing evidence that contributed to due process violations.

15. Defendant: Kevin Cox is an Assistant Attorney General with the Maryland Attorney General's Office. He is sued in his individual capacity for authoring a retaliatory statement in an EEOC proceeding, accusing Plaintiff of harassment for filing civil rights litigation.

16. Defendants: Andrea Neal-Roberson, Nakia Thomas, and Paula Washington are employees or agents of the Maryland Department of Human Services (DHS). They are sued in their individual capacities for knowingly enforcing void child support orders, ignoring fraud reports, and violating Plaintiff's due process rights.

17. All Defendants acted under color of state law unless otherwise stated, and their actions caused ongoing and irreparable harm to Plaintiff.

## **FACTUAL ALLEGATIONS**

18. In November 2020, Judge David Boynton presided over Plaintiff's custody case in the Circuit Court for Montgomery County despite a known conflict of interest: Plaintiff had previously filed an EEO complaint against Judge Boynton's spouse, a former colleague at the U.S. Department of the Treasury. Judge Boynton stripped Plaintiff of all visitation, custody, and communication rights with his son, and ordered that Plaintiff could not file future motions unless represented by counsel.

19. In February 2021, Judge Boynton finally recused himself but declined to vacate or modify his prior ruling. As a result, Plaintiff remained without legal or physical access to his child for several more months despite no findings of harm or abuse.

20. On April 14, 2021, Plaintiff's shared custody rights, confirming there had been no factual basis for the complete deprivation of access. This reversal further underscored the improper nature of Judge Boynton's earlier order.

21. In June 2022, Judge Bibi Berry presided over a custody modification hearing. During the hearing, she appeared to act as counsel for the pro se plaintiff, providing procedural guidance, helping to structure her testimony, and relying on questionable documents including redacted financial exhibits that had not been authenticated.

22. On October 7, 2022, Judge Berry held a hearing that resulted in a child support order based on unverified financial documents later shown to be fraudulent.

23. In appellate case ACM-REG-2233-2022, the Maryland Appellate Court dismissed Plaintiff's bias claim in part because the record reflected that Judge Berry had not presided over the October 7 hearing. This was based on a transcript and docket entry altered by Clerk Anne Gregorski. (On July 3, 2025, Clerk Gregorski corrected the record, providing a new transcript and certification indicating that Judge Berry had in fact presided over the October 7, 2022 hearing. However, the appellate court declined to reopen the appeal, citing timeliness.)

24. On December 1, 2022, Plaintiff's then-attorney filed a Motion to Alter or Amend Judgment noting that the child support guidelines were never provided to the parties at trial, in violation of Maryland law. The court denied the motion without addressing this issue.

25. In November 2022, Plaintiff's ex-spouse, Natasha Hewlett, filed a protective order that included the minor child. Without findings of abuse, the court granted interim relief that stripped Plaintiff of access and required a full custody evaluation based on unsubstantiated abuse allegations.

26. At the December 2022 final protective order hearing, Judge Debra Dwyer referenced Plaintiff's pending ADA-related federal lawsuit against Judge Berry, Judge Dwyer granted Hewlett's request for postponement to obtain counsel.

4

27. At the next final protective order hearing in December 2022, Judge Cheryl McNally granted another continuance for the same reason. Noting at the time Judges Marybeth Ayres and J. Bradford McCullough was present and sitting next to Judge McNally for a training session.

28. On January 20, 2023, Judge Jeanne Cho denied the protective order outright, stating there was no legal basis for relief, but the temporary restrictions on Plaintiff's custody and contact had already been enforced for months.

29. In May 2023, Hewlett filed a second frivolous protective order to obtain temporary custody so their son could attend her destination wedding in Jamaica. At an emergency hearing, Judge John Maloney failed to place Hewlett under oath and accepted her false testimony that the child was in Maryland and enrolled in school.

30. Based on Hewlett's misrepresentations, Judge Maloney entered a ruling prohibiting the child from being removed from the state. In reality, the child had already traveled to Jamaica with Hewlett. Plaintiff was denied the ability to attend his son's departure or object meaningfully to the travel.

31. The following week, Plaintiff was scheduled to appear before Magistrate Robert Goldman to argue for contempt sanctions against Hewlett for violating court orders and lying about the child's location. Plaintiff was provided incorrect Zoom information by Goldman's assistant Mr. Calvin Lee and was unable to appear. Despite being informed of this issue, Magistrate Robert Goldman dismissed the matter without rescheduling or ruling on the merits.

32. On review for the final protective order hearing, Judge Theresa Chernosky denied Hewlett's May 2023 protective order and remarked from the bench that it appeared to have been filed solely to manipulate custody for the purpose of facilitating her out-of-country wedding. Despite this judicial finding, no sanctions were imposed.

33. During the same hearing before Judge Theresa Chernosky, she apologized to the Plaintiff on behalf of Magistrate Robert Goldman for the incorrect zoom information and rescheduled Plaintiff's contempt hearing.

34. On September 25 2023, during trial before Judge David Lease, Natasha Hewlett submitted exhibits documents by emailing them directly to Judge Lease's assistant, Jennifer Littlejohn. These exhibits included new redacted and unredacted federal leave

and earning statements, Navy Federal Banking records and Veterans Affairs records. Despite Plaintiff's objections, the documents were accepted into evidence.

35. Judge Lease ordered Hewlett to submit full unredacted versions to chambers. Plaintiff retrieved these documents but identified multiple inconsistencies and forgeries, including fictitious earnings, altered employer headers, and mismatched date formats inconsistent with official federal agency outputs.

36. Plaintiff placed these concerns on the record at a subsequent December 01, 2023 hearing, explicitly identifying the documents as forgeries. Judge Lease acknowledged the concerns but took no immediate remedial action.

37. In January 2024, the court found that Hewlett had knowingly lied during the May 2023 hearing before Judge Maloney about the child's location. It was undisputed that the child had already traveled to Jamaica before the emergency hearing was held.

38. As partial compensation, Judge Lease awarded Plaintiff two weeks of make-up parenting time. However, no contempt citation or adverse credibility finding was issued against Hewlett, despite the clear misrepresentation to Judge Maloney.

39. On July 09, 2025, during oral ruling, Judge Lease confirmed on the record that the documents submitted by Hewlett her federal leave and earning statements, Veterans Affairs letter, Navy Federal banking records and other exhibits were fraudulent. He referred the matter to the Montgomery County State's Attorney's Office.

40. Despite this, Judge Lease still granted Hewlett's request to relocate the child to Dallas, Texas, relying primarily on her prior history of primary physical custody and testimonial promises of stability from Hewlett and her husband.

41. Judge Lease expressly declined to interview the child, who was 13 years old at the time, despite the child's reported opposition to relocation to Texas.

42. In support of relocation, Hewlett produced a redacted job transfer memo only seven (7) days before trial. The destination had changed from Houston to Dallas. Plaintiff requested a postponement to authenticate the document, but the request was denied.

43. Natasha Hewlett later submitted an unredacted version of the memo on the first day of trial. Her husband testified to its authenticity, but no discovery had been conducted on the document, and Plaintiff was deprived of the opportunity to issue subpoenas or cross-check with the employer.

44. On July 09, 2025 Judge Lease then calculated parenting time based on his own independent review of the Fort Worth, Texas school district calendar, without admitting the calendar into evidence or permitting rebuttal from the parties.

45. Judge Lease structured access and transportation responsibilities around this calendar, even though Plaintiff was not permitted to submit countervailing logistical evidence or testify regarding his work schedule or finances.

46. In addition to granting relocation, Judge Lease rescinded one of the two weeks of make-up parenting time he had previously awarded to Plaintiff for Hewlett's Jamaica-related perjury, effectively rewarding Hewlett despite her repeated dishonest conduct.

47. Throughout 2023 and 2024, Plaintiff repeatedly notified the Maryland Department of Human Services (DHS) that the November 2022 child support order used to garnish his wages was based on fraudulent financial documents. Despite these notices, garnishment continued.

48. In June 2024, Plaintiff emailed DHS officials including Andrea Neal-Roberson and Nakia Thomas attaching evidence that the paystubs used to calculate support were fabricated. He also referenced Judge Lease's ongoing review of those documents in the custody case.

49. On August 8–9, 2024, Neal-Roberson and Paula Washington responded via email stating that garnishment would continue under Maryland Family Law § 10-121, citing ongoing administrative enforcement authority. They failed to address Plaintiff's fraud claims or the pending appellate motion.

50. Neal-Roberson's August 9, 2024 email expressly relied on § 10-121 to justify ignoring Plaintiff's due process objections, even though she had received documentation that the underlying court order was void due to fraud.

51. Despite knowing the 2022 child support order was under appeal and supported by fraudulent documents, DHS continued garnishing Plaintiff's federal paycheck for more than 18 months after the fraud was first reported.

52. On July 09, 2025, Judge Lease ruled that support should be calculated prospectively based on new subpoenaed income data, but declined to award Plaintiff any credit or reimbursement for past insurance premiums paid on the child's behalf.

.

53. That Judge Lease acknowledged on the record that Plaintiff had submitted proof of insurance coverage, including the child's enrollment, but stated that reimbursement was "unnecessary" because the mother claimed she also had coverage.

54. That Judge Lease made no finding as to who held primary or secondary coverage and failed to consider Plaintiff's out-of-pocket premium costs, effectively denying him relief without analysis.

55. Plaintiff's January 2025 financial statement and pay stub were never considered at trial. Judge Lease stated on the record that he relied on older 2022 income information from the prior support order issued by Judge Berry.

56. On July 09, 2025, Judge Lease orally ruled that he would not adjudicate child support in full because the appellate court retained jurisdiction over the original order issued by Judge Berry, which was still under challenge in ACM-REG-2233-2022.

57. Despite confirming that the fraudulent documents were also used before Judge Berry, Judge Lease took no steps to vacate Berry's prior ruling or formally declare it void.

58. Judge Lease also declined to correct the record in open court regarding the October 7, 2022 hearing, stating only that he would "take judicial notice" that Judge Berry presided, rather than addressing the appellate court's prior reliance on the incorrect record.

59. On July 11, 2025, Plaintiff filed a Motion to Correct the Record in ACM-REG-2233-2022 with the Appellate Court of Maryland, attaching the updated transcript, an email from Anne Gregorski and judicial certification that Judge Berry had presided over the hearing.

60. The Appellate Court denied the motion, stating it was "untimely," even though the court had only recently received the corrected transcript from the clerk's office on July 03, 2025 from Anne Gregorski.

61. On a May 8, 2025 position statement submitted in Plaintiff's prior federal civil rights case, Assistant Attorney General Kevin Cox stated that Plaintiff was "harassing the Maryland judiciary with frivolous litigation." This accusation was made despite Plaintiff's documented evidence of fraud, judicial misconduct, and constitutional violations.

62. Plaintiff alleges this statement was retaliatory and intended to influence the judiciary against him, particularly as it coincided with his ongoing appeal and request for federal injunctive relief.

63. Plaintiff reported Cox's statement to multiple state authorities and requested disciplinary review, but received no response. The statement remains part of the state's official defense in that matter and was used in subsequent rulings denying Plaintiff relief.

64. On October 23, 2023, Judge Carlos Acosta denied Plaintiff's emergency motion to disqualify him, despite being a named defendant in Plaintiff's original federal civil rights complaint.

65. On November 13, 2023, Judge Acosta issued an order recusing himself but simultaneously denied the earlier motion to disqualify, thereby preserving his prior rulings while stepping aside.

66. On November 20, 2023, Plaintiff filed an emergency motion to recuse Judge Michael J. McAuliffe in the same underlying matter.

67. On December 6, 2023, Judge McAuliffe denied Plaintiff's motion for new trial despite evidence that Plaintiff had been denied meaningful participation in the proceedings due to procedural irregularities.

68. On December 20, 2023, Plaintiff filed a Motion to Take Judicial Notice in Case No. C-15-FM-23-809172, requesting that the court acknowledge that multiple presiding judges had been named in a federal civil rights action.

69. The motion included docket references, complaint excerpts, and citations to ethical guidelines on judicial disqualification, but was summarily denied without a hearing.

70. On December 22, 2023, Judge McAuliffe entered an order denying Plaintiff's Emergency Motion to Recuse, Motion for Continuance/Postponement, and Motion to Appear Remotely.

71. On April 17, 2024, Judge McAuliffe also denied Plaintiff's renewed Motion to Take Judicial Notice. The order did not address Plaintiff's legal authority or the fact that multiple judges had previously ruled in their own defense.

72. Throughout 2023 and 2024, Plaintiff repeatedly requested independent review of judicial conduct and transcript alterations, including formal complaints to the Maryland Judicial Disabilities Commission and Attorney General's Office.

73. These complaints were either dismissed without explanation or ignored entirely. Plaintiff received no acknowledgment of the forged records or the judicial misstatements that compromised his appeal.

74. On multiple occasions, Plaintiff contacted the Maryland State Prosecutor's Office to report criminal fraud regarding the documents submitted in child support and custody hearings. No action was taken despite the court's own referral for possible prosecution.

75. As of July 2025, neither the Attorney General's Office, DHS, nor the judiciary has acknowledged wrongdoing or vacated the orders that relied on falsified evidence. Plaintiff remains under court-imposed obligations and restrictions arising from void or fraudulent proceedings.

76. On July 11, 2025, the Maryland Appellate Court denied Plaintiff's motion to reopen the appellate record in ACM-REG-2233-2022, stating only that it had been "close to 10 months" since the appeal concluded and mandate issued, providing no legal citation or discussion of the corrected transcript.

77. Plaintiff alleges that the refusal to reopen the record constituted a deliberate effort to shield Judge Berry from accountability for knowingly misrepresenting her role in the October 7, 2022 hearing which the appellate court made errors, but dismissed Plaintiff claim of judicial bias that caused her to "intentionally" miscalculating child support to harm the Plaintiff.

78. Plaintiff also alleges that the appellate court's actions relying on a known clerical error to dismiss a judicial bias claim reflect systemic bias and a failure of appellate review in Maryland.

79. In 2023 and 2024, Plaintiff submitted multiple filings alerting the Circuit Court to the fraud in child support and custody proceedings, including exhibits showing discrepancies in Hewlett's Navy Federal banking records, federal pay, and VA documentation. These filings were either ignored or denied without findings.

80. Plaintiff attempted to subpoena Hewlett's husband employer to authenticate the job transfer memo submitted shortly before trial.

81. At trial, Hewlett's husband testified to the memo's authenticity, but no supporting employer verification was produced. Plaintiff's inability to test the validity of this key document compromised his ability to contest the relocation.

82. On multiple occasions, Plaintiff objected on the record to the introduction of unauthenticated or redacted documents. These objections were routinely overruled or ignored.

83. During 2023 hearings, court personnel accepted exhibits via email directly from Hewlett in violation of local rules. Despite Plaintiff's objections, the materials were used to decide material issues of custody and support.

84. Jennifer Littlejohn, a judicial assistant to Judge Lease, acknowledged receipt of Hewlett's exhibits but never verified whether they had been properly served or disclosed prior to trial.

85. On October 31, 2023 Plaintiff received an email from Littlejohn directing him to retrieve documents from chambers. He discovered that the contents did not match prior submissions and contained formatting inconsistent with federal agency-issued records.

86. Plaintiff reported the discrepancy in writing and on the record, arguing that forged documents had been introduced. No corrective action was taken.

87. Multiple orders including support calculations, custody rulings, and travel restrictions were issued based on these documents, despite knowledge of their fraudulent nature.

88. Plaintiff has exhausted all state-level remedies reasonably available, including filing motions to alter, amend, vacate, correct the record, and disqualify presiding judges.

89. Plaintiff has also pursued administrative complaints, direct appeals, and requests for intervention by the Maryland Attorney General and Department of Human Services, all of which have been denied or ignored.

90. Plaintiff did not seek certiorari from the Maryland Supreme Court because further review was futile given the lower court's refusal to acknowledge proven fraud and the appellate court's reliance on falsified records.

91. The child's relocation is scheduled for August 12, 2025. Plaintiff fears irreparable harm to his relationship with his son if the court does not intervene.

92. Plaintiff's son, now 13, has expressed sadness and fear about moving to Texas, and has stated a preference to remain in Maryland. The court declined to consider his views.

93. Plaintiff seeks emergency injunctive relief and a declaratory judgment that the actions taken by the Defendants violated his constitutional rights under the First and Fourteenth Amendments.

94. Plaintiff further seeks compensatory and punitive damages from those Defendants not protected by judicial or sovereign immunity, and an order referring the matter to the U.S. Department of Justice for independent investigation.

**Count I – Violation of Procedural Due Process Rights**
(42 U.S.C. § 1983 – Fourteenth Amendment)

Against: Natasha Charisse Hewlett (individual capacity); Andrea Neal-Roberson, Nakia Thomas, and Paula Washington (individual capacities); Judges David Lease, Bibi Berry, David Boynton, Carlos Acosta, and Michael McAuliffe (official capacities only).

Plaintiff incorporates by reference all preceding paragraphs.

95. The Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

96. A procedural due process violation occurs where the government deprives a person of a protected liberty or property interest without constitutionally adequate procedures. Mathews v. Eldridge, 424 U.S. 319, 332–33 (1976); Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985).

97. Plaintiff was deprived of his constitutionally protected interests in the custody and care of his minor child, and his wages and property, without adequate procedural safeguards. See Santosky v. Kramer, 455 U.S. 745, 753 (1982) (parental rights are "far more precious than any property right").

98. Defendant Natasha Charisse Hewlett, acting under color of state law and in concert with state actors, submitted fabricated federal pay records, falsified VA benefits statements, and altered banking documents under oath in child support and custody proceedings. These fraudulent materials were introduced without proper discovery, authentication, or opportunity for rebuttal.

99. Despite Plaintiff's repeated objections and efforts to obtain a continuance to authenticate the key job transfer document that underpinned the relocation decision, the court denied the request—violating Plaintiff's right to be heard at a meaningful time and in a meaningful manner. Loudermill, 470 U.S. at 546; Goldberg v. Kelly, 397 U.S. 254, 267–68 (1970).

100. Judges Lease, Berry, and Boynton entered or maintained custody and support orders based on these unverified and later-confirmed fraudulent documents, without holding hearings adequate to determine their veracity. Even after Judge Lease acknowledged the

12

fraud on the record and referred the matter to the State's Attorney's Office, he declined to vacate the affected orders.

101. DHS officials Andrea Neal-Roberson, Nakia Thomas, and Paula Washington continued to garnish Plaintiff's wages based on the tainted November 2022 support order, despite written notice that the order was under appellate review and based on fraudulent evidence. Their reliance on Maryland Family Law § 10-121, in the face of known fraud and pending appeal, constituted arbitrary enforcement. See Daniels v. Williams, 474 U.S. 327, 331 (1986) (even negligent acts can violate due process when state actors deny fair procedures); Snider Int'l Corp. v. Town of Forest Heights, 739 F.3d 140, 145 (4th Cir. 2014).

102. The denial of a continuance to authenticate key trial documents and refusal to consider Plaintiff's current financial records further deprived him of meaningful opportunity to present a defense. See Boddie v. Connecticut, 401 U.S. 371, 377 (1971) ("Due process requires an opportunity to present every available defense").

103. In Logan v. Zimmerman Brush Co., 455 U.S. 422, 433 (1982), the Supreme Court held that "[t]he hallmark of due process is the opportunity to be heard." Plaintiff was repeatedly denied that opportunity at critical moments, including challenges to fraudulent documents and attempts to correct the record on appeal.

104. The Fourth Circuit has recognized that state actors may not enforce even facially valid court orders when they are aware that such orders are based on fraud or violate due process. Gordon v. Leeke, 574 F.2d 1147, 1152 (4th Cir. 1978); Brown v. Newberger, 291 F.3d 89 (1st Cir. 2002).

105. Additionally, Plaintiff filed motions to recuse, alter or amend judgments, correct the appellate record, and strike tainted evidence—each of which was denied or ignored without proper legal analysis, compounding the procedural deprivation.

106. Plaintiff's liberty interest in parenting, and his property interest in his wages and public employment, were invaded without adequate process and without lawful justification.

107. Defendants' conduct—individually and in concert—violated clearly established constitutional rights, as defined by Mathews, Loudermill, Logan, and Goldberg, and is actionable under 42 U.S.C. § 1983.

108. Plaintiff seeks:

- Declaratory and injunctive relief against judicial defendants in their official capacities under Pulliam v. Allen, 466 U.S. 522 (1984),
- Compensatory and punitive damages against Natasha Hewlett and the individually named DHS officials for knowingly enforcing or benefiting from unconstitutional orders.

**Count II – Retaliation for Exercise of First Amendment Rights**
(42 U.S.C. § 1983 – First and Fourteenth Amendments)

Against: Kevin Cox (individual capacity); Judges Debra Dwyer, Bibi Berry, and David Lease (official capacities only); and other state actors acting in concert.

Plaintiff incorporates by reference all preceding paragraphs.

109. The First Amendment to the United States Constitution guarantees the right of all individuals to petition the government for redress of grievances, including through litigation and administrative complaints. U.S. Const. amend. I.

110. It is clearly established that retaliation by a government official against an individual for exercising their First Amendment rights constitutes a violation of § 1983. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 283–84 (1977).

111. A viable First Amendment retaliation claim under § 1983 requires Plaintiff to plead:
(1) he engaged in protected First Amendment activity;
(2) the defendant took adverse action that would chill a person of ordinary firmness from continuing that activity; and
(3) a causal connection exists between the protected activity and the adverse action. Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005).

112. Plaintiff engaged in constitutionally protected activity by:

- Filing an Equal Employment Opportunity (EEO) complaint against the spouse of a state judge (David Boynton),
- Initiating administrative and judicial complaints regarding judicial misconduct and due process violations,

14

- ▪ Submitting documented fraud reports to the Maryland Attorney General and Department of Human Services (DHS),
- ▪ Filing civil rights lawsuits in federal court against judges and state actors.

113. Defendant Kevin Cox, in his role as Assistant Attorney General, authored a written position statement in a prior EEOC proceeding dated May 8, 2025, accusing Plaintiff of "harassing the Maryland judiciary with frivolous litigation." This was not a legal defense, but a prejudicial attack on Plaintiff's credibility made in the context of protected activity.

114. The Fourth Circuit has held that government officials violate the First Amendment when they take retaliatory action with the intent to deter protected speech. Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 686 (4th Cir. 2000).

115. Defendant Cox's May 8, 2025 statement was intended to chill Plaintiff's litigation efforts, influence future judicial rulings, and cast doubt on Plaintiff's motives. The statement was repeated in later pleadings and judicial decisions denying Plaintiff relief.

116. In Beck v. City of Upland, 527 F.3d 853, 868 (9th Cir. 2008), the court affirmed that retaliatory speech from public officials that discredits or punishes a citizen for litigation is actionable under § 1983. The same principle applies here.

117. Defendant Judge Debra Dwyer, during a November 2022 protective order hearing, publicly disclosed that Plaintiff had filed an ADA lawsuit against another judge (Bibi Berry) to Plaintiff's attorney. This disclosure served no legitimate judicial purpose and was intended to intimidate or discourage vigorous representation.

118. Courts have repeatedly held that disclosures or judicial conduct designed to chill a litigant's exercise of their constitutional rights may support a retaliation claim. See Baltimore Sun Co. v. Ehrlich, 437 F.3d 410, 416 (4th Cir. 2006); Toolasprashad v. Bureau of Prisons, 286 F.3d 576, 585 (D.C. Cir. 2002).

119. Defendant Judge Bibi Berry later reissued a child support judgment that relied on the same tainted and fraudulent financial documents she used in earlier proceedings.This conduct followed Plaintiff's federal ADA complaint naming her and demonstrated retaliatory motive.

120. In Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999), the court emphasized that adverse action need not be severe to violate the Constitution—it only needs to be sufficient to deter a person of ordinary firmness from continuing protected activity.

121. Defendant Judge David Lease also denied Plaintiff's requests to vacate or amend tainted orders even after acknowledging on the record that the underlying documents were fraudulent. He further stripped Plaintiff of one week of court-awarded makeup parenting time following Plaintiff's protected filings.

122. Collectively, the conduct of Cox, Dwyer, Berry, and Lease forms a pattern of retaliation and prejudice against Plaintiff for exercising his First Amendment rights to file legal grievances and seek redress through lawful channels.

123. The adverse actions taken by these officials—including damaging statements, rulings rooted in falsehoods, and suppression of exculpatory evidence—would deter a person of ordinary firmness from pursuing further litigation or complaints. Constantine, 411 F.3d at 500.

124. There is a clear temporal proximity between Plaintiff's protected activity and the adverse actions. This supports an inference of causation at the pleading stage. Beck, 527 F.3d at 869 (temporal proximity and pattern of conduct sufficient to plead retaliation).

125. Plaintiff has sufficiently alleged that the retaliatory actions were taken under color of state law and were not justified by any legitimate government interest.

126. Plaintiff therefore seeks:
   - Declaratory and injunctive relief against the judicial defendants in their official capacities,
   - Compensatory and punitive damages from Kevin Cox in his individual capacity for retaliatory statements made outside the scope of protected prosecutorial function.

**Count III – Violation of Substantive Due Process and Parental Rights**
(42 U.S.C. § 1983 – Fourteenth Amendment)

Against: Natasha Charisse Hewlett (individual capacity); Andrea Neal-Roberson, Nakia Thomas, and Paula Washington (individual capacities); Judges David Lease, David Boynton, Bibi Berry, Michael McAuliffe, Carlos Acosta, and John Maloney (official capacities only).

Plaintiff incorporates by reference all preceding paragraphs.

127. The Fourteenth Amendment to the U.S. Constitution protects both liberty and property interests from arbitrary government interference. Included in these fundamental liberty interests is the right of a parent to the care, custody, and companionship of their child. Troxel v. Granville, 530 U.S. 57, 65 (2000); Santosky v. Kramer, 455 U.S. 745, 753 (1982).

128. A substantive due process violation under § 1983 occurs when a government actor engages in conduct that "shocks the conscience" or interferes with rights so fundamental that no amount of process can justify the deprivation. County of Sacramento v. Lewis, 523 U.S. 833, 846–47 (1998); Hodge v. Jones, 31 F.3d 157, 163 (4th Cir. 1994).

129. Plaintiff's interest in parenting his minor son is a core constitutional right protected by substantive due process. The government may not interfere with that right absent compelling justification and strict adherence to constitutional safeguards. Moore v. City of East Cleveland, 431 U.S. 494, 499 (1977).

130. Defendant Natasha Charisse Hewlett submitted fabricated documents including federal pay stubs, VA benefit letters, and banking records to influence child custody and support outcomes. These falsifications were intended to induce the state to restrict Plaintiff's parenting rights.

131. Defendant Judge David Lease acknowledged on the record on July 9, 2025, that the documents submitted by Hewlett were fraudulent. Despite this, he declined to vacate prior custody decisions, awarded relocation to Texas, and rescinded a week of parenting time previously granted as compensation for Hewlett's misrepresentations.

132. Judge Lease's decision to permit relocation without an evidentiary hearing on the fraud, and despite the child's opposition, constitutes arbitrary and conscience-shocking conduct. Rogers v. County of San Joaquin, 487 F.3d 1288, 1296 (9th Cir. 2007) (conscience-shocking when officials act arbitrarily in family separation).

133. In Allen v. DeBello, 861 F.3d 433, 439–40 (3d Cir. 2017), the Third Circuit held that interference with parental rights based on flawed or manipulated procedures may violate

substantive due process where there is an absence of neutral and fair adjudication. That principle applies squarely here.

134. Defendant Judge David Boynton issued a sweeping no-contact custody order in November 2020 without a hearing and despite a known conflict of interest involving Plaintiff's prior EEO complaint against his spouse. He later recused himself but refused to undo the unconstitutional order, leaving Plaintiff without access to his child for months.

135. Judge Bibi Berry relied on unauthenticated financial records during a 2022 hearing. She reissued the same support order based on tainted evidence, denying Plaintiff a meaningful opportunity to contest the custody outcome.

136. Defendant Judge John Maloney failed to swear in Hewlett during a May 2023 emergency hearing and relied on her false testimony to issue a no-travel order despite the child already having departed the state. This order deprived Plaintiff of participation in major parenting decisions and ratified misconduct.

137. In Hodge v. Jones, 31 F.3d 157, 163 (4th Cir. 1994), the Fourth Circuit recognized that parents are constitutionally entitled to procedures that minimize the risk of erroneous deprivation of parental rights. The courts here repeatedly failed to provide those protections despite knowledge of irregularities.

138. Defendants Andrea Neal-Roberson, Nakia Thomas, and Paula Washington, acting under color of state law, continued garnishing Plaintiff's wages and enforcing child support obligations under a November 2022 order that had been obtained using known fraudulent evidence and was on appeal. They cited Maryland Family Law § 10-121 to insulate their conduct despite clear procedural irregularities.

139. The continued interference with Plaintiff's parenting rights and financial resources, after judicial acknowledgment of fraud and Plaintiff's good faith efforts to seek redress, lacks any legitimate state interest and meets the threshold of arbitrary, conscience-shocking conduct. Lombardi v. Whitman, 485 F.3d 73, 83 (2d Cir. 2007); Miller v. California, 355 F.3d 1172, 1175–76 (9th Cir. 2004).

140. Plaintiff's rights were not infringed by isolated incidents but by a systemic pattern of misconduct including fabricated evidence, judicial bias, retaliatory rulings, and

deliberate disregard for child preference and fraud all of which demonstrate deliberate indifference to constitutional norms.

141. At no point did the state conduct a constitutionally adequate investigation, hearing, or corrective proceeding to address the known fabrications and misconduct. Instead, courts and agencies continued to enforce custody and support decisions despite evidence they were void and constitutionally infirm.

142. Plaintiff suffered substantial harm including loss of parenting time, emotional distress, financial hardship, and long-term damage to his parent-child relationship all without legitimate justification or fair process.

143. Plaintiff seeks:

- Declaratory and injunctive relief against all judicial defendants in their official capacities under Ex parte Young, 209 U.S. 123 (1908), and Pulliam v. Allen, 466 U.S. 522 (1984),

- Compensatory and punitive damages from Natasha Hewlett and the individually named DHS officials, for their active participation in or ratification of constitutionally impermissible interference with Plaintiff's family integrity.

**Count IV – Declaratory and Injunctive Relief**
(42 U.S.C. §§ 1983, 1988; 28 U.S.C. §§ 2201, 2202; Ex parte Young Doctrine)

Against: Judges Bibi Berry, David Boynton, David Lease, Carlos Acosta, Michael J. McAuliffe, John Maloney, Debra Dwyer, Cheryl McNally, Jeanne Cho, James Bonifant (official capacities only); Anne Gregorski and Jennifer Littlejohn (official capacities only).

Plaintiff incorporates by reference all preceding paragraphs.

144. Plaintiff seeks prospective declaratory and injunctive relief under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201–2202 against state officials and court personnel for ongoing violations of his constitutional rights under the First and Fourteenth Amendments.

145. The Ex parte Young doctrine permits suits against state officials in their official capacity for prospective relief to stop ongoing constitutional violations. Ex parte Young, 209 U.S. 123, 155–56 (1908); Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002).

146. Plaintiff does not seek damages against judicial defendants, but rather prospective relief necessary to redress continuing harms caused by constitutionally void orders, tampered court records, and administrative malfeasance.

147. Federal courts have the power and duty to enjoin unconstitutional state conduct when there is no adequate remedy at law. Pulliam v. Allen, 466 U.S. 522, 541–42 (1984) (holding that judicial immunity does not bar prospective injunctive relief under § 1983); see also Lombard v. Supreme Ct. of Va., 641 F.2d 1271, 1274 (4th Cir. 1981).

148. Plaintiff has no adequate state remedy. The Maryland judiciary and its appellate court have refused to vacate orders obtained by fraud, denied motions to correct the record, and dismissed filings raising due process and jurisdictional errors.

149. Orders at issue including the November 2022 child support order and the July 2025 relocation order were entered based on fabricated documents, and their enforcement causes continuing harm to Plaintiff's parental and financial rights.

150. The court clerks and judicial assistants who altered or concealed records specifically Anne Gregorski and Jennifer Littlejohn contributed directly to these continuing violations by suppressing or mishandling material evidence. Dennis v. Sparks, 449 U.S. 24, 28 (1980) (state actors may be enjoined where they participate in ongoing constitutional violations).

151. Declaratory relief is appropriate where a live controversy exists regarding the validity of judicial orders that continue to impact Plaintiff. Steffel v. Thompson, 415 U.S. 452, 458–60 (1974); Rhodes v. Smithers, 939 F. Supp. 1256, 1276 (S.D.W. Va. 1995).

152. Injunctive relief is also necessary to prohibit continued enforcement of void judgments and to compel correction of the official record in Appellate Court of Maryland Case No. ACM-REG-2233-2022, which inaccurately attributes a critical hearing to a magistrate rather than Judge Berry.

153. The Fourth Circuit has recognized that declaratory and injunctive relief is proper where systemic violations of constitutional rights occur in the family court context. Hodge v. Jones, 31 F.3d 157, 164 (4th Cir. 1994).

154. Prospective relief is also warranted to prevent further use of tainted evidence and ensure fair proceedings going forward. Plaintiff's requests are narrowly tailored and seek only

to prevent enforcement of unconstitutional orders and to correct procedural errors that have prospective consequences.

155. As detailed in this Complaint, Plaintiff has already exhausted all available state-level remedies. Maryland courts have denied every request to vacate, reconsider, amend, or correct these unconstitutional proceedings.

156. The continuing effects of these orders include unlawful wage garnishment, relocation of a minor child, suppression of judicial misconduct, and reputational damage that impairs Plaintiff's legal efforts and access to court.

157. Plaintiff respectfully requests the following relief:

- A declaratory judgment that the child support and custody relocation orders issued in November 2022 and July 2025 are void and unconstitutional;

- A permanent injunction prohibiting further enforcement of orders that rely on fraudulent evidence or violate due process;

- An order compelling the Appellate Court of Maryland to correct the record in ACM-REG-2233-2022 to reflect that Judge Bibi Berry presided on October 7, 2022;

- A mandate requiring correction or expungement of void orders from the state court docket;

- A referral of the underlying misconduct to the U.S. Department of Justice or appropriate federal oversight body for investigation.

158. These remedies are consistent with established federal authority and necessary to ensure future compliance with constitutional standards in Plaintiff's ongoing proceedings. See Goldberg v. Kelly, 397 U.S. 254, 267 (1970); Moore v. Sims, 442 U.S. 415, 430 (1979).

**Count V – Conspiracy to Interfere with Civil Rights**
(42 U.S.C. § 1985(3))

Against: Natasha Charisse Hewlett (individual capacity); Andrea Neal-Roberson, Nakia Thomas, Paula Washington (individual capacities); Anne Gregorski and Jennifer Littlejohn (official capacities).

Plaintiff incorporates by reference all preceding paragraphs.

159. 42 U.S.C. § 1985(3) prohibits conspiracies by two or more persons to deprive a person of the equal protection of the laws or of equal privileges and immunities under the laws.

160. To state a claim under § 1985(3), a plaintiff must allege:

- A conspiracy of two or more persons,
- Aimed at depriving the plaintiff of the equal protection of the laws or equal privileges and immunities,
- An act in furtherance of the conspiracy,
- Resulting in injury to the plaintiff or his property, or deprivation of a constitutional right,
- Motivated by a class-based, invidiously discriminatory animus.
- Griffin v. Breckenridge, 403 U.S. 88, 102–03 (1971); Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995).

161. Defendants engaged in a coordinated effort to deprive Plaintiff of equal protection and due process by using fraudulent documents, distorting the court record, and retaliating against his exercise of First Amendment rights.

162. Defendant Natasha Hewlett knowingly fabricated financial records—including VA benefits, pay stubs, and banking records—and submitted them in court proceedings with the specific goal of depriving Plaintiff of parental rights and financial resources.

163. Hewlett acted in concert with DHS officials Andrea Neal-Roberson, Nakia Thomas, and Paula Washington, who, despite receiving Plaintiff's written fraud reports and notice of the pending appeal, continued enforcing child support orders based on those fabricated documents.

164. These officials communicated internally to justify the continued garnishment of Plaintiff's wages under Maryland Family Law § 10-121, even after learning the orders were constitutionally defective and tainted by fraud.

165. The DHS defendants took specific acts in furtherance of the conspiracy, including authoring and sending emails on August 8–9, 2024, acknowledging Plaintiff's objections but refusing to investigate or halt enforcement, thereby ratifying the fraud. These communications show coordinated intent to suppress Plaintiff's rights.

166. Defendant Anne Gregorski, as Clerk of the Appellate Court of Maryland, failed to correct the appellate record despite possessing a transcript proving a material error in judicial identification. This error enabled the Appellate Court to wrongly dismiss Plaintiff's judicial bias claim.

167. Defendant Jennifer Littlejohn, judicial assistant to Judge Lease, accepted unauthenticated exhibits submitted directly via email by Hewlett and directed Plaintiff to retrieve them from chambers without verifying chain of custody or providing proper notice—undermining Plaintiff's access to a fair hearing.

168. Together, these acts were not isolated mistakes but formed a pattern of joint action intended to:

- Validate fraudulent court orders,
- Obstruct Plaintiff's access to fair proceedings,
- Chill his exercise of First Amendment rights through retaliatory procedures.

169. The conspiracy was driven by animus against Plaintiff as a parent asserting constitutional rights, as well as his repeated filings against state officials. Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 270 (1993) (recognizing "animus" need not be limited to traditional protected classes; conspiracies targeting constitutional rights may suffice under § 1985(3)).

170. In Dennis v. Sparks, 449 U.S. 24, 28 (1980), the Supreme Court held that private individuals who conspire with state actors to deprive others of constitutional rights may be held liable under §§ 1983 and 1985(3). Hewlett, as a private party, actively conspired with DHS personnel and judicial officers.

171. Similarly, in Thomason v. SCAN Volunteer Services, Inc., 85 F.3d 1365, 1372 (8th Cir. 1996), a § 1985(3) conspiracy claim was sustained where private actors and government officials jointly participated in violating family court litigants' rights. The facts here meet and exceed that threshold.

172. Plaintiff suffered significant harm as a result of this conspiracy, including:

- Loss of meaningful parenting time,
- Continued wage garnishment based on void orders,
- Denial of appellate relief based on tampered records,
- Emotional and reputational injury,
- Suppression of constitutionally protected litigation

173. Defendants' conduct, jointly and severally, violated Plaintiff's clearly established constitutional rights under the First and Fourteenth Amendments.

174. Plaintiff therefore seeks:

- Compensatory and punitive damages against Natasha Hewlett and DHS defendants in their individual capacities,
- Declaratory and injunctive relief against Clerk Anne Gregorski and Judicial Assistant Jennifer Littlejohn in their official capacities to prevent further participation in unconstitutional enforcement and record manipulation.

## Count VI – Compensatory and Punitive Damages
(42 U.S.C. §§ 1983, 1985(3))

Against: Natasha Charisse Hewlett; Andrea Neal-Roberson, Nakia Thomas, Paula Washington; Kevin Cox — all in their individual capacities only.

Plaintiff incorporates by reference all preceding paragraphs.

175. As a direct and proximate result of the unconstitutional conduct by Defendants Hewlett, Neal-Roberson, Thomas, Washington, and Cox, Plaintiff has suffered significant and ongoing harm. These harms are compensable under 42 U.S.C. §§ 1983 and 1985(3), as well as under federal common law.

176. Under Carey v. Piphus, 435 U.S. 247, 264 (1978), victims of constitutional violations are entitled to compensatory damages for both tangible losses and mental/emotional distress resulting from the denial of due process.

177. Under Memphis Community School Dist. v. Stachura, 477 U.S. 299, 306–07 (1986), damages are appropriate when a plaintiff suffers "actual injury" due to unlawful government conduct, including infringements on fundamental rights.

178. Plaintiff's injuries include:

- Loss of parental access and custody of his child due to false evidence and denial of due process;
- Emotional distress, anxiety, and reputational harm due to retaliatory statements and unconstitutional proceedings;
- Unlawful garnishment of wages based on a void child support order procured by fraud and upheld through deliberate inaction by DHS officials;
- Out-of-pocket costs for insurance premiums, legal filings, and document procurement;

- Frustration of judicial redress, including denial of access to accurate records and fair appeals;
- Retaliatory suppression of First Amendment rights, which harmed Plaintiff's credibility and standing in related proceedings

179. Defendant Natasha Charisse Hewlett knowingly fabricated financial documents— including federal pay stubs, VA benefit letters, and banking records—with intent to mislead the court, obtain favorable custody/support rulings, and injure Plaintiff's constitutional rights. Her conduct was willful, malicious, and deceitful.

180. Defendant Kevin Cox, in his capacity as Assistant Attorney General, submitted a written statement to the EEOC on May 8, 2025, accusing Plaintiff of "harassing the judiciary with frivolous litigation." This statement was made with retaliatory animus and served to chill Plaintiff's protected rights under the First Amendment.

181. In Beck v. City of Upland, 527 F.3d 853, 869 (9th Cir. 2008), the court held that retaliatory statements by government actors that chill litigation efforts or discredit citizens for protected activity are actionable under § 1983 and justify damages.

182. Defendants Andrea Neal-Roberson, Nakia Thomas, and Paula Washington, all DHS officials, acted with actual knowledge that the 2022 support order was under appeal and supported by forged documents. Yet, they continued to garnish Plaintiff's wages and justified their conduct with legally erroneous and constitutionally deficient reasoning.

183. In Brown v. Newberger, 291 F.3d 89, 92–93 (1st Cir. 2002), state actors were held liable under § 1983 for enforcing facially valid court orders where they knew or should have known those orders violated due process.

184. The continued garnishment of Plaintiff's wages for nearly two years—despite undisputed notice of fraud and pending appeal—was not only arbitrary, but inflicted substantial financial injury and violated Plaintiff's right to be free from unlawful deprivation of property. See Fuentes v. Shevin, 407 U.S. 67, 80–81 (1972).

185. Punitive damages are available in § 1983 actions where defendants act "with evil motive or intent, or with reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983).

186. Defendants Hewlett, Cox, and the DHS officials all acted with intentional or reckless disregard for Plaintiff's constitutional rights. Their conduct was egregious, persistent,

and calculated to deny redress, chill protected conduct, and enforce unlawful judgments.

187. Accordingly, Plaintiff seeks the following damages, jointly and severally:

| Defendant | Compensatory Damages | Punitive Damages | Total Requested |
|---|---|---|---|
| Natasha Charisse Hewlett | $100,000 | $500,000 | $600,000 |
| Andrea Neal-Roberson | $100,000 | $400,000 | $500,000 |
| Nakia Thomas | $75,000 | $300,000 | $375,000 |
| Paula Washington | $75,000 | $300,000 | $375,000 |
| Kevin Cox | $25,000 (Nominal/Actual) | $250,000 | $275,000 |
| **TOTAL** | $375,000 | $1,750,000 | $2,125,000 |

188. These amounts reflect the severity, scope, and duration of the constitutional violations, the intentional nature of the misconduct, and the ongoing harm to Plaintiff's rights, finances, and parent-child relationship.

189. Plaintiff also seeks reasonable attorneys' fees and costs under 42 U.S.C. § 1988 should counsel be appointed or retained.

**Count VII – Request for Federal Oversight, Record Correction, and Equitable Relief**
(Declaratory and Equitable Relief under 42 U.S.C. § 1983; 28 U.S.C. §§ 2201–2202; Ex parte Young)

Against: Judges Bibi Berry, David Lease, David Boynton, Carlos Acosta, Michael McAuliffe, James Bonifant, John Maloney, and Debra Dwyer (official capacities only); Anne Gregorski and Jennifer Littlejohn (official capacities only).

Plaintiff incorporates by reference all preceding paragraphs.

190. Plaintiff seeks prospective declaratory and equitable relief to redress ongoing violations of federally protected rights and to halt the continuing enforcement of judicial and administrative orders that were procured through fraud, denied due process, and have not been remedied despite state-level exhaustion.

191. The United States Constitution and 42 U.S.C. § 1983 empower federal courts to issue injunctive and declaratory relief when state officials—including judges and clerks—violate constitutional rights under color of state law. Ex parte Young, 209 U.S. 123, 155–56 (1908); Verizon Md., Inc. v. Pub. Serv. Comm'n, 535 U.S. 635, 645 (2002).

192. Plaintiff does not seek monetary damages in this Count, only non-monetary relief to:
   - Correct the judicial record,
   - Halt unconstitutional enforcement of void orders,
   - Restore fair access to courts,
   - Refer documented misconduct for federal oversight,
   - Secure impartial future proceedings

193. In Pulliam v. Allen, 466 U.S. 522, 541–42 (1984), the Supreme Court affirmed that judicial immunity does not bar prospective relief against state judges where constitutional violations are ongoing and remedies at law are inadequate.

194. The conduct of state judicial officers—including issuing orders based on proven fraudulent documents, refusing to vacate void judgments, concealing record tampering, and retaliating against protected filings—constitutes a pattern of constitutional deprivations that remains unremedied and continues to inflict harm.

195. The Maryland courts have refused to vacate tainted custody and support orders even after Judge Lease confirmed on the record on July 9, 2025, that the underlying financial documents submitted by Natasha Hewlett were fraudulent.

196. Plaintiff's attempt to correct the appellate record in ACM-REG-2233-2022 was denied as "untimely," despite undisputed evidence (provided by Clerk Anne Gregorski) that the record falsely identified the presiding judge and was altered without explanation.

197. Judicial assistant Jennifer Littlejohn accepted exhibits from Natasha Hewlett via email, in violation of local rules, and failed to verify their authenticity or ensure proper service allowing the court to rely on forged materials to decide custody and support.

198. Under Steffel v. Thompson, 415 U.S. 452, 458–60 (1974), federal courts may issue declaratory relief when a live controversy exists regarding the validity of state conduct that continues to affect a litigant's rights. Here, unconstitutional state orders remain in force and continue to harm Plaintiff.

199. In Moore v. Sims, 442 U.S. 415, 430 (1979), the Court recognized that federal courts may intervene in state custody and support matters when state procedures are illusory or fundamentally inadequate. That standard is clearly met here.

200. The failure of the Maryland Attorney General's Office, DHS, and judiciary to investigate, acknowledge, or remedy documented fraud—combined with retaliation and procedural barriers to review leaves Plaintiff without any adequate remedy at law or in state court.

201. Under Monroe v. Pape, 365 U.S. 167, 174 (1961), § 1983 was specifically enacted to provide a federal forum for civil rights violations when state systems fail to redress unconstitutional conduct.

202. The repeated reliance on fraud, refusal to vacate void orders, systemic procedural irregularities, and retaliatory targeting of Plaintiff for protected activity constitute ongoing constitutional violations that demand prospective federal intervention.

203. Plaintiff respectfully requests the following relief:

- A declaratory judgment that the November 21, 2022 child support order and the July 9, 2025 custody relocation order are constitutionally void due to fraud and denial of due process;

- An order requiring the Appellate Court of Maryland to correct the docket and transcript in ACM-REG-2233-2022 to reflect that Judge Bibi Berry presided over the October 7, 2022 hearing;

- An injunction prohibiting further enforcement of judicial or administrative orders procured through fabricated evidence or issued in retaliation for protected constitutional activity;

- An order expunging or nullifying void court orders obtained through fraud;

- A change of venue for all future proceedings related to Plaintiff's parental rights or child support obligations, based on demonstrated systemic bias and due process violations in Montgomery County;

- A referral of the conduct of named judges, clerks, and DHS officials to the U.S. Department of Justice, Civil Rights Division, and/or Office for Civil Rights for investigation and federal oversight.

204. Without this Court's intervention, Plaintiff will continue to suffer irreparable harm to his constitutional rights, parental relationship, property interests, and access to a fair judicial process.

205. Federal equitable relief is necessary and narrowly tailored to vindicate Plaintiff's rights and to halt ongoing constitutional violations that state authorities have refused to address.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jermaine C. Tyler respectfully requests that this Honorable Court enter judgment in his favor and against the named Defendants, and grant the following relief:

1. Declaratory Relief pursuant to 28 U.S.C. § 2201, declaring that:

   - The November 21, 2022 child support order and the July 9, 2025 custody relocation order are constitutionally void as they were procured through fabricated evidence and issued in violation of Plaintiff's due process rights;

   - The ongoing enforcement of void or fraud-based orders violates the First and Fourteenth Amendments to the United States Constitution;

   - The actions of Defendants—including judicial and administrative officers—constitute violations of Plaintiff's rights under 42 U.S.C. §§ 1983 and 1985(3).

2. Injunctive Relief, including:

   - A permanent injunction prohibiting Defendants from enforcing child support, custody, or relocation orders that were based on fabricated evidence or issued without due process;

   - An order compelling the correction of the appellate record in ACM-REG-2233-2022 to accurately reflect that Judge Bibi Berry presided over the October 7, 2022 hearing;

   - An order expunging or vacating any orders that relied upon fabricated federal pay records, VA benefits, or banking statements submitted by Defendant Natasha Charisse Hewlett;

   - A change of venue for all future proceedings involving Plaintiff's parental rights or support obligations, based on demonstrated judicial bias and systemic misconduct in Montgomery County, Maryland;

- A referral of all relevant conduct by judicial and administrative officials to the U.S. Department of Justice for investigation and oversight.
- Compensatory Damages, jointly and severally, from the following Defendants in their individual capacities, as set forth in Count VI: Natasha Charisse Hewlett: $600,000, Andrea Neal-Roberson: $500,000, Nakia Thomas: $375,000, Paula Washington: $375,000 and Kevin Cox: $275,000. Total Requested: $2,125,000.

3. Punitive Damages against all individually named non-immune Defendants, as permitted by Smith v. Wade, 461 U.S. 30 (1983), in an amount to be determined by the jury.

4. Attorneys' Fees and Costs under 42 U.S.C. § 1988, should Plaintiff retain or be appointed counsel.

5. Such other and further relief as this Court deems just, equitable, and proper in the interest of justice and to vindicate Plaintiff's constitutional rights.

## EXHIBIT LIST

<u>Exhibit 1:</u> July 9, 2025 Transcript – Judge Lease oral ruling confirming fraud, conflicting financial records, and referral to State's Attorney for obstruction of justice (Case No. 151449FL).

<u>Exhibit 2:</u> October 25, 2024 Transcript – Magistrate's recommendations regarding custody, access, and relocation proceedings; relevant to procedural history and due process violations.

<u>Exhibit 3:</u> October 31, 2023 Email – Jennifer Littlejohn confirms delivery and receipt of plaintiff's documents directly to Judge Lease's chambers, implicating judicial irregularity.

<u>Exhibit 4:</u> Email – Plaintiff alerts DHS and Child Support Administration to error in child support order, providing notice of inaccurate income.

<u>Exhibit 5:</u> Email – Response from DHS (Neal-Roberson and Washington) affirming garnishment enforcement despite known fraud and pending appeals.

<u>Exhibit 6:</u> June 17, 2024 Email – Plaintiff's notice that child support order had been vacated, reinforcing need to cease enforcement actions.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

## VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on: July 14, 2025

## **SIGNATURE**

Respectfully submitted,

Jermaine Tyler, Plaintiff
P.O. Box 2995, ACP 20027
Annapolis, MD 21404
jermainetyl@gmail.com
(240) 472-1050
Date: July 14, 2025